Michael T. Stoller, Esq., (Bar No. 120241)
LIBERTY LAW GROUP
7215 Canby Avenue
Reseda, California 91335
Telephone: 310-245-4028
Email: michael.stoller@stollerlawgroup.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| CHARNE DAVIS, mother of student A. D. | Case No. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT FOR PARTIAL REVERSAL OF ADMINISTRATIVE DUE PROCESS DECISION** |
| LONG BEACH UNIFIED SCHOOL DISTRICT (District) | |
| Defendant. | |

Plaintiff alleges as follows:

**JURISDICTION**

1. This Court has original jurisdiction over this action under the Individuals with Disabilities Education Act, 20 U. S. C. § 1400-1482. Plaintiff was the

1
1

Petitioner in a due process hearing complaint filed with the California Office of Administrative Hearings ("OAH"), Case # 2021020305.

Jurisdiction is conferred by 20 U. S. C. § 1415(i)(3)(A).

## VENUE

2.  Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because Plaintiff and Defendant are in this district and the claims arose in this district.

## THE PARTIES

4.  Plaintiff Charne Davis, A.D.'s mother, has standing pro se to enforce her independent rights to a free appropriate public education (FAPE) for her child, although the Supreme Court found it unnecessary to reach whether a parent may proceed pro per on behalf of her minor child. Here the mother seeks to enforce her rights to a FAPE for her son, and therefore has standing to bring this action. *Winkelman v. Parma City School District*, 550 U.S. S I6, 526 (2007).

Her son A. D., a minor, was a student in the District who has been found eligible for special education and related services under the Individuals with Disabilities Education Act (IDEA). His mother disagreed with district assessments or fsilures to assess in psychoeducation, occupational therapy, central auditory processing, and developmental vision. The district failed to fund or to file in order to establish its right not fund these independent evaluations by the mother's choices of assessors.

5.  Defendant Long Beach Unified School District is a public school district in the Central District of California, and a local education agency under the IDEA and the California Education Code.  It owes A. D. and his mother a FAPE, including appropriate assessments, because A.D. is a District resident.

## RELEVANT FACTUAL BACKGROUND

6.  Plaintiff Charne Davis filed a due process complaint on February 5, 2021 with the Office of Administrative Hearings (OAH) on behalf of A. D.  That complaint was filed under the Individuals with Disabilities Education Act ("IDEA"), raising two issues.

7.  Issue 1 alleged that while Defendant ostensibly granted an independent educational evaluation (IEE), Defendant then denied the IEE by Plaintiff's choice of assessor due to allegedly excessive cost, and then did not file a due process complaint to defend its refusal and the appropriateness of its cost cap, as legally required.

8.  Issue 2 alleged that Defendant had failed to respond to Plaintiff's request for IEEs in psychoeducation, Central Auditory Processing Disorder (CAPD), and occupational therapy (OT).  At the beginning of the hearing, as the decision states, LBUSD conceded Issue 2 in part, stipulating that it had never responded at all, and so certainly had not filed.  It agreed to fund these IEEs, but maintained that it still had the right to limit the parent's choice in accordance with its cost caps, although it had never filed to defend those either.[1]

---

[1]District has agreed to fund a psychoeducational IEE by Robin Morris, and an OT IEE by Launchpad Therapy -  parent's chosen assessors - so that these assessment are no longer at issue, provided Defendant follows through as promised.  The vision and CAPD IEEs remain at issue.

9.  The hearing proceeded on both Issue 1 and Issue 2, and was completed in one day, May 19, 2021. That decision held that Defendant had failed to file to defend its refusal to fund or to defend its cost caps. It held further that Defendant was obliged to fund the IEEs at issue, and that it had failed to do so.  However, the ALJ held that Defendant could still enforce its cost caps, even though it had never filed to defend them as the law requires.

10  A decision was issued on July 15, 2021. Plaintiff has exhausted her administrative remedies and has timely filed this complaint to reverse the OAH Decision to the degree that it allowed Defendant to enforce its cost caps when Defendant had never complied with the law by filing a complaint to defend its right to enforce those cost caps.

## FIRST CAUSE OF ACTION

### For Partial Reversal of OAH Due Process Decision

11.  Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 10 of the complaint as though fully set forth herein.

12.  Plaintiff established at hearing that Defendant agreed to fund an independent educational evaluation (IEE) in developmental vision, but then refused to fund the assessment by the mother's choice of assessor, Douglas Stephey, O.D., M.S.  Defendant then at no time filed to show that its cost cap was justified.

13.  Defendant also conceded at the beginning of the due process hearing that it had failed even to respond to Plaintiff's August 17, 2020 request to fund other

IEEs in psychoeducation, occupational therapy (OT), and Central Auditory Processing Disorder (CAPD).

14.  If an agency refuses to fund an IEE because the assessor allegedly violates the agency requirements - among them its cost cap - it may not just refuse to fund. It must additionally file for a hearing to show that its requirements may properly be enforced.  If it fails to do so, then it forfeits its right to enforce its requirements.

15.  But the administrative law judge (ALJ), found that Defendant was entitled to enforce its cost caps without having filed, in effect finding that Defendant's failure to file vindicated its right to enforce cost caps that it declined to defend by filing as required.

16.  The U.S. Dept. of Education's Office of Special Education Programs (OSEP) held in its 2004 Letter to Parker that if the agency wishes to deny funding for an assessor because he or she does not meet agency criteria it must file to prove that it may enforce its criteria, and that if it does not, then it must fund, in these words:

> [] if a parent elects to obtain an IEE by an evaluator not on the public agency's list of evaluators, the public agency may initiate a due process hearing to demonstrate that the evaluation obtained by the parent did not meet the public agency criteria applicable for IEEs or there is no justification for selecting an evaluator that does not meet agency criteria.  **If the public agency chooses not to initiate a due process hearing, it must ensure that the parent is reimbursed for the evaluation.** [emphasis added]

17.  The ALJ disregarded the law in order to hold that Defendant could enforce its cost caps, although it is undisputed that Defendant chose not to initiate a due process hearing as required.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRAYER FOR RELIEF

Plaintiff requests relief as follows:

1.  That the Court reverse the ALJ's decision to the extent that it permitted Defendant to enforce its cost caps even though Defendant chose not to initiate a due process hearing to defend their appropriateness as the law requires.

2. That the Court order Defendant to fund the IEEs by Plaintiff's chosen assessors.

3.  That the Court remand to OAH to determine appropriate compensatory services for the deprivation of educational benefits caused by Defendant's failure to fund the IEEs timely.

Dated:  September 28, 2021

Michael T. Stoller
Attorney for Plaintiff

BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
STATE OF CALIFORNIA

---

## CASE NO. 2021020305

---

PARENT ON BEHALF OF STUDENT,

v.

LONG BEACH UNIFIED SCHOOL DISTRICT.

---

## DECISION

JULY 15, 2021

On February 5, 2021, the Office of Administrative Hearings, called OAH, received a due process hearing request from Student, naming Long Beach Unified School District. On March 15, 2021, OAH granted Long Beach's request for continuance to May 18,2021. On May 7, 2021, OAH granted Long Beach's request for a one-day continuance, to May 19, 2021.  Administrative Law Judge Cole Dalton heard this matter in Los Angeles on May 19, 2021.

Damian Fragoso represented Student.  Mother attended all hearing days on Student's behalf.  Debra Ferdman represented Long Beach.  Dr. Rachel Heenan, Director

of Special Education and the Special Education Local Plan Area, also called a SELPA, attended all hearing days on Long Beach's behalf.

At the parties' request the matter was continued to June 9, 2021 for written closing briefs. The record was closed, and the matter was submitted on June 9, 2021.

## ISSUES

1. Did Long Beach deny Student a free appropriate public education, or FAPE, in response to Parent's request for an independent vision therapy evaluation in August 2020, by:
   a. Failing to timely fund the evaluation by relying on an unreasonable limit on the cost of the evaluator?
   b. Failing to file a request for due process hearing to demonstrate that Parent's requested evaluator exceeded Long Beach's cost criteria?
2. Did Long Beach deny Student a FAPE by:
   a. Failing to provide Student with independent educational evaluations in the areas of central auditory processing disorder, occupational therapy, and psychoeducation after Student's August 17, 2020 request?
   b. Failing to deny the request for evaluations and file a timely request for due process hearing to defend Long Beach's assessments?

On the record, before testimony was taken, the parties stipulated that Long Beach received Parent's August 17, 2020 email requesting independent educational evaluations in central auditory processing, occupational therapy, and psychoeducation. The parties further stipulated that Long Beach did not respond to that email from August 17, 2020 through and beyond the date Student filed their complaint in this matter.

2

Student withdrew Issue 3, before testimony began.

JURISDICTION

This hearing was held under the Individuals with Disabilities Education Act, its regulations, and California statutes and regulations.  (20 U.S.C. § 1400 et. seq.; 34 C.F.R. § 300.1 (2006) et seq.; Ed. Code, § 56000 et seq.; Cal. Code Regs., tit. 5, § 3000 et seq.)  The main purposes of the Individuals with Disabilities Education Act, referred to as the IDEA, are to ensure:

- all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living, and
- the rights of children with disabilities and their parents are protected.  (20 U.S.C. § 1400(d)(1); See Ed. Code, § 56000, subd. (a).)

The IDEA affords parents and local educational agencies the procedural protection of an impartial due process hearing with respect to any matter relating to the identification, assessment, or educational placement of the child, or the provision of a FAPE to the child.  (20 U.S.C. § 1415(b)(6) & (f); 34 C.F.R. § 300.511; Ed. Code, §§ 56501, 56502, and 56505; Cal. Code Regs., tit. 5, § 3082.)  The party requesting the hearing is limited to the issues alleged in the complaint, unless the other party consents, and has the burden of proof by a preponderance of the evidence.  (20 U.S.C. § 1415(f)(3)(B); Ed. Code, § 56502, subd. (i); *Schaffer v. Weast* (2005) 546 U.S. 49, 57-58, 62 [126 S.Ct. 528, 163 L.Ed.2d 387]; and see 20 U.S.C. § 1415(i)(2)(C)(iii).)  Student had the burden of proof. The factual statements in this Decision constitute the written findings of fact required by the IDEA and state law.  (20 U.S.C. § 1415(h)(4); Ed. Code, § 56505, subd. (e)(5).)

3

Student was nine years old and in second grade at the time of hearing.  Student lived within Long Beach's geographic boundaries at all relevant times.  Long Beach found Student eligible for special education as a child with autism and, secondarily, with specific learning disability and speech language impairment.

ISSUE 1:  DID LONG BEACH DENY STUDENT A FAPE IN RESPONSE TO PARENT'S REQUEST FOR AN INDEPENDENT VISION THERAPY EVALUATION IN AUGUST 2020, BY FAILING TO TIMELY FUND THE EVALUATION BY RELYING ON AN UNREASONABLE LIMIT ON THE COST OF THE EVALUATOR OR BY FAILING TO FILE A REQUEST FOR DUE PROCESS HEARING TO DEMONSTRATE THAT PARENT'S REQUESTED EVALUATOR EXCEEDED LONG BEACH'S COST CRITERIA?

Student contends that Long Beach delayed the independent vision therapy evaluation it agreed to provide by imposing unreasonable cost criteria.  Student further contends Long Beach was required to, but did not, file a request for due process hearing to demonstrate that Parent's requested evaluator exceeded Long Beach's cost criteria. Student argues he is entitled to an independent vision therapy evaluation by an assessor solely of his choosing, at Long Beach's expense, regardless of the cost.

Long Beach argues that it imposed reasonable cost criteria and that Parent failed to demonstrate unique circumstances to justify exceeding the cost criteria.  Long Beach also argues that it was not required to file a request for due process hearing where it granted Parent's request for an independent evaluation, but Parent refused to choose an evaluator meeting the cost criteria.

4

The procedural safeguards of the IDEA provide that under certain conditions, a parent is entitled to obtain an independent evaluation of a child at public expense.  (20 U.S.C. §1415(b)(1); 34 C.F.R. § 300.502(a)(1), (b)(1) and (2); Ed. Code, §§ 56329, subd. (b), 56506, subd. (c).)  An independent evaluation is an evaluation conducted by a qualified examiner not employed by the school district.  (34 C.F.R. § 300.502(a)(3)(i).)

## ISSUE 1(A): LONG BEACH RELIED ON REASONABLE COST CRITERIA

Student failed to demonstrate by a preponderance of the evidence that Long Beach relied on unreasonable cost criteria or that the cost criteria was so narrow as to interfere with Parent's right to an independent educational evaluation at public expense.

Long Beach conducted a triennial psychoeducational assessment of Student, reported under cover of October 10, 2019.  Subsequently, Parent retained a private educational psychologist to provide more information on her son's dyslexia.  In her discussions with the private psychologist, Parent learned about vision therapy.  Parent often contradicted herself at hearing.  However, her inconsistencies, largely, did not appear to be intentional and did not impact the determination of issues in this decision, unless otherwise noted.

Parent researched and located six or seven vision therapy providers, attempting to find someone to help her better understand her son's processing issues.  She spoke to vision therapy assessor Dr. Doug Stephey, whom Parent described, at hearing, as a developmental optometrist.  During the summer of 2020, Dr. Stephey conducted an eye examination of Student, as a precursor to conducting a vision therapy assessment, and prescribed glasses.

A parent has the right to request an independent evaluation at public expense if the parent disagrees with an evaluation obtained by the school district, and only has the

right to one independent educational evaluation at public expense each time the school district conducts an evaluation with which the parent disagrees.  (34 C.F.R. § 300.502(b)(1); Ed. Code, § 56329, subd. (b).)  When a parent requests an independent evaluation at public expense, the school district must, "without unnecessary delay," either initiate a due process hearing to show that its evaluation is appropriate, or provide the independent evaluation at public expense, unless the school district demonstrates at a due process hearing that an independent evaluation already obtained by the parent does not meet its criteria.  (34 C.F.R. §300.502(b)(4); Ed. Code, § 56329, subd. (c).)

On August 10, 2020, Parent requested an independent educational evaluation with Dr. Stephey, citing Parent's disagreement with vision conclusions drawn in Long Beach's October 10, 2019 psychoeducational testing batteries.  The parties' communications regarding the requested evaluation use the terms vision therapy assessment or evaluation and vision assessment or evaluation, interchangeably.

If a school district decides not to take a requested action, including agreement to the independent evaluation requested by parents, the district must provide parents with a prior written notice within a reasonable time period.  (34 C.F.R. § 300.503.)  The notice must include an explanation of why the agency proposes or refuses to take the action.

Long Beach considered Parent's request and, on September 8, 2020, sent prior written notice to Parent granting her request to an independent vision therapy evaluation based upon Parent's disagreement with the 2019 psychoeducational assessment.  Long Beach, as part of its prior written notice, agreed to contract with an independent professional, appropriately licensed, credentialed, and trained in the type of assessment Parent requested.  Long Beach identified an individual at Ketchum

6

University, as an assessor meeting Long Beach's cost and other criteria for independent educational evaluations.

School districts must provide parents with information about where the independent evaluation may be obtained, as well as the school district criteria applicable for independent evaluations.  (34 C.F.R. § 300.502(a)(2).)  A district may provide parent with a list of pre-approved assessors, but there is no requirement that the parent select an evaluator from the district-created list.  (*Letter to Parker*, 41 IDELR 155 (OSEP 2004).)  When enforcing independent evaluation criteria, the district must allow parents the opportunity to select a qualified evaluator who is not on the list but who meets the criteria set by the public agency.  (*Id.*)

Long Beach informed Parent that she could select another provider, consistent with Long Beach's cost and other independent evaluation criteria.  Long Beach provided Parent with a website link to the criteria and Parent's Rights and Procedural Safeguards.  Long Beach provided a consent form that would allow Long Beach to contract with Parent's chosen provider and for the assessment process to begin.  Long Beach provided contact information for Dr. Rachel Heenan and the California Department of Education, should Parent have any questions about the assessment process.

Dr. Heenan worked at Long Beach for 15 years as a special education director and SELPA director.  Dr. Heenan earned a doctoral degree in educational psychology, held a clear pupil personnel services credential for school counseling, a clear administrative services credential, and was a nationally certified counselor.  Dr. Heenan knowledgeably described Long Beach's independent educational evaluation policies and criteria.  She carefully testified without overstepping the bounds of her expertise or personal knowledge.  Cross-examination failed to expose weaknesses in her testimony, which was credible and carried substantial weight.

If an independent evaluation is at public expense, the criteria under which the assessment is obtained, including location of the evaluation and qualifications of the examiner, must be the same as the criteria that the school district uses when it initiates an assessment, to the extent those criteria are consistent with the parent's right to an independent evaluation.  (34 C.F.R. § 300.502(e)(1).)  A district's criteria may not be so narrow as to interfere with a parent's right to obtain an independent evaluation.  (*Letter to Petska*, 35 IDELR 191 (OSEP 2001).)

The evidence demonstrated that Long Beach's publicly funded independent evaluations met the same criteria as evaluations conducted by Long Beach's assessors. Long Beach constituted the sole school district within its SELPA, due to its size.  Long Beach relied on SELPA policy for independent educational evaluations.  The policy contained several written criteria for minimum qualifications, geographic location, and cost of independent evaluations also applied to Long Beach's assessors.  Tasks required of independent assessors, also required of Long Beach's assessors, included observation, record review, administration of testing instruments chosen by the assessor, report writing, and attendance at an IEP meeting.

School districts may also establish criteria to ensure that publicly funded independent evaluations are not unreasonably expensive.  (*Letter to Wilson*, 16 IDELR 83 (OSEP October 17, 1989).)  Public agencies should not be expected to bear the costs of independent evaluations where those costs are clearly unreasonable.  (*Letter to Kirby*, 213 IDELR 233 (OSEP 1989).)  In order to avoid unreasonable charges for independent evaluations, a district may establish maximum allowable charges for specific tests.  (*Id.*) If a district does establish maximum allowable charges for specific tests, the maximum cannot be an average of the fees customarily charged in the area by professionals who are qualified to conduct the specific test.  (*Id.*)  The maximum must be established so

8

that it allows parents to choose from among the qualified professionals in the area and only eliminates unreasonably excessive fees.  (*Id.*)

SELPA policy established maximum allowable charges for specific assessments based upon a systematic and continuous review of local assessment fees.  SELPA cost criteria was reasonable.  Dr. Heenan reviewed SELPA independent evaluation policy annually to ensure legal compliance based upon recent court and OAH decisions.  She gathered and exchanged information on legal developments, cost criteria, and available assessors during monthly statewide meetings with other SELPA directors.  Dr. Heenan also conferred with SELPA directors in Los Angeles, San Diego, and Orange counties to obtain information on local assessors.  Dr. Heenan reviewed rates for recent assessments, solicited information from new assessors, and developed cost criteria reasonable for southern California.  Setting aside low and high outliers, Dr. Heenan looked at the remaining cost range for assessors in various testing areas.  Dr. Heenan did not base cost criteria on a simple average of fees customarily charged in the area by professionals qualified to conduct specific tests.  Dr. Heenan developed the cost criteria for vision therapy assessments in a range suitable for most qualified assessors in Southern California.

Long Beach's cost criteria were not so narrow as to interfere with Parent's right to obtain an independent vision therapy evaluation.  The weight of the evidence demonstrated that each of the vision therapy assessors offered by Long Beach to Parent fell within SELPA cost criteria.  For example, Parent obtained copies of Long Beach contracts with independent vision therapy evaluators and found none exceeded SELPA cost criteria.  Moreover, several qualified assessors at nearby locations including Ketchum University, easily fell within Long Beach's cost criteria, as established by Dr. Heenan.  Parent did not contact anyone from Ketchum or other entities offered by Long

9

Beach, about the evaluation.  Student, at hearing, presented no persuasive evidence undermining the reasonableness of Long Beach's cost criteria for independent vision therapy evaluations.

On October 6, 2020, Long Beach's attorney Debra Ferdman and Student's advocate Peter Attwood exchanged several emails negotiating the terms of the independent evaluation.  Ferdman provided Parent with the names of two additional qualified optometrists and one entity, all falling within cost criteria for an independent vision therapy evaluation.  The entity Ferdman identified, Ketchum Health Vision Therapy, employed numerous qualified pediatric optometrists from whom Parent could have chosen an assessor.

Parent did not contact any of the providers or entities offered by Long Beach. Long Beach repeatedly informed Parent that she could select any qualified assessor who met SELPA qualification, location, and cost criteria.  She did not.  Parent believed she was entitled to choose any assessor regardless of the cost criteria.  On September 17, 2020, Parent provided Long Beach with a signed and dated consent form granting her permission for Dr. Stephey to conduct the assessment.

When enforcing reasonable cost criteria, the district must allow parents the opportunity to demonstrate that unique circumstances justify an independent evaluation that does not fall within the school district's criteria.  (*Letter to Kirby*, *supra*, 213 IDELR 233 (OSEP 1989).)  If an independent evaluation that falls outside the district's criteria is justified by the child's unique circumstances, that evaluation must be publicly funded.  (*Id*.)  Where the only person qualified to conduct the type of evaluation needed by a child does not meet agency criteria, the public agency must ensure that the parent still has the right to the evaluation at public expense and is informed about where the evaluation may be obtained.  (*Letter to Parker*, *supra*, 41 IDELR 155 (OSEP 2004).)

10

On September 23, 2020, Long Beach's special education secretary Ariana Zambada and Dr. Stephey exchanged email correspondence regarding whether he could conduct a vision assessment under Long Beach's cost criteria of $300-$500 for visual acuity and perception and $300-$500 for visual processing. Dr. Heenan clarified, at hearing, that the vision assessment consisted of visual acuity and perception testing, conducted by an optometrist. A school psychologist typically conducted visual processing testing.

Dr. Stephey responded to Zambada with his fee schedule and a request for contract language that he would provide a vision assessment, written report, review of past records of up to one hour, and IEP meeting of up to one hour, for a cost of up to $1800. Dr. Stephey explained that assessments and written reports can cost as low as $800 but that most are in the $1,500 range. Dr. Stephey advised Parent that costs for his evaluation would fall between $1400 to $1800. Student did not argue and presented no evidence that Parent could not find a local assessor who could conduct an independent vision therapy assessment within Long Beach's cost criteria.

Long Beach notified Parent it would reconsider her request to exceed cost criteria if she provided reasons why Dr. Stephey was uniquely qualified to conduct a vision therapy assessment of Student. Long Beach provided such notice in the SELPA policy provided on September 8, 2020, in the September 28, 2020 prior written notice, and in October 6, 2020 negotiations between Attwood and Ferdman. Neither Parent nor Attwood presented Long Beach with any information regarding unique circumstances. Parent did not argue at hearing and presented no evidence demonstrating that Dr. Stephey was in any way uniquely qualified to conduct a vision therapy assessment of Student.

11

Student, in his closing brief, argued that SELPA cost criteria for vision therapy assessments was unreasonable because it was confusing.  Student argued the criteria did not have a specific title for vision therapy.

Student's argument lacks merit for several reasons.  First, Dr. Stephey and Long Beach both described an independent vision therapy evaluation using the term "visual assessment," as evidenced by Dr. Stephey's proposed contract language and Long Beach's policies on independent evaluations.  Second, Dr. Stephey explained his testing to Parent and to Long Beach in telephone calls and emails.  (*See, L.C. by and through Cruz v. Alta Loma School Dist.* (9th Cir. 2021) 849 Fed.Appx. 678, (*Alta Loma*) (school district not required to identify any particular information where parents had access to the same information as the school district regarding evaluation rates and the relevant cost cap.).

Third, Parent did not seek additional information on vision therapy testing from Long Beach.  Parent never expressed, before hearing, any confusion between Long Beach's visual assessment and visual processing assessment or whether Long Beach would fund tests in each area.  Her inconsistent and at times evasive testimony on this point at hearing was not given significant weight.  Parent, at hearing, confirmed that she knew Long Beach had cost criteria that needed to be met and was aware of Dr. Stephey's rates for a vision therapy evaluation, which far exceeded Long Beach's cost criteria.

Further, Student argues, Long Beach failed to provide a clear cost cap. Zambada's September 23, 2020 email exchange with Dr. Stephey placed the cost cap between $600 and $850, as Zambada included the visual assessment and visual processing assessment.  Ferdman's October 6, 2020 email exchange with Attwood placed Long Beach's cost cap at $700 and identified Dr. Ikeda, Dr. Kirschen, and

12

Ketchum Health Vision Therapy as charging between $425 and $550 for their assessments.  Dr. Heenan, at hearing, placed the cost cap between $300 and $500 for the visual assessment and explained that Long Beach had contracted with Dr. Ikeda and Dr. Kirschen within SELPA cost criteria.  Dr. Heenan, in her calculation, excluded costs for visual processing tests, which weren't part of the visual assessment.

While true that Long Beach provided inconsistent cost information in emails to Dr. Stephey and Attwood, the written SELPA criteria sets forth the rate of $300 to $500 for a visual assessment consisting of visual acuity and perception testing.  Parent's September 28, 2020 email correspondence to Dr. Heenan established that, after Parent reviewed the emails and spoke to Dr. Stephey, Parent knew there was an issue with the rates Dr. Stephey charged and Parent believed Dr. Stephey's rates were reasonable.  Parent had no questions regarding what SELPA rates applied to the independent vision therapy evaluation she requested.  Moreover, Dr. Stephey never agreed to lower his cost cap of $1,800.  Any confusion Parent may have had neither surfaced before hearing nor impacted the parties' negotiations to resolve the cost criteria dispute.

Student also took issue with SELPA criteria identifying vision specialists, rather than optometrists, in the minimum qualifications for visual acuity and perception evaluations.  This argument also lacks merit.  Parent requested that an optometrist conduct the vision therapy evaluation.  Long Beach offered only optometrists as qualified assessors.  Though it remained unclear why SELPA criteria used the term vision specialist instead of optometrist, the lack of clarity had no impact on the parties' ability to negotiate an agreement for the vision therapy evaluation.

Student did not meet her burden of proving that Long Beach's cost criteria for an independent vision therapy evaluation was unreasonable.  Student also did not

demonstrate that Long Beach's criteria were so narrow as to effectively prevent her from obtaining the evaluation.  Student did not meet her burden on Issue 1(a).

## ISSUE 1(B): LONG BEACH FAILED TO FILE A REQUEST FOR DUE PROCESS HEARING WITHOUT UNNECESSARY DELAY

On August 10, 2020, Parent requested an independent vision therapy evaluation. On September 8, 2020, Long Beach granted Parent's request and provided her with information regarding assessors meeting SELPA criteria.

The parties reached a final impasse on October 6, 2020, after Attwood and Ferdman could not come to a consensus on an evaluator that met Long Beach's cost criteria.  Parent refused to consider an assessor other than Dr. Stephey and did not provide Long Beach with unique circumstances for exceeding its cost criteria.  Long Beach refused to fund an assessment beyond its cost criteria because of the lack of any information showing that only Dr. Stephey could appropriately evaluate Student and because of the availability of other appropriately qualified vision therapists who met district's cost criteria.  Long Beach did not fund the assessment and did not file a request for due process hearing.

"Unnecessary delay" is a fact specific inquiry focused on circumstances surrounding the delay.  (*C.W. v. Capistrano Unified Sch. Dist.* (9th Cir. 2015) 784 F.3d 1237, 1247; *J.P. ex rel. E.P. v. Ripon Unified Sch. Dist.* (E.D. Cal. April 15, 2009, No. 2:07-CV-02084-MCE-DAD) 2009 WL 1034993, at p.7 (*Ripon*) (two-month delay before filing to defend district's assessment while district attempted to negotiate an independent evaluation agreement with parent and filed for due process less than three weeks after negotiations came to an impasse was not unnecessary).)  The term "unnecessary delay," not defined in the regulations, permits a reasonably flexible, though normally brief, time

14

period to accommodate good faith discussions and negotiations between the parties over the need for, and arrangements for, an independent evaluation.  (*Letter to Anonymous*, 56 IDELR 175 (OSEP 2010).)  When the parties continue to discuss provision of an independent evaluation, there is no unnecessary delay in the school district waiting to file for due process until the parties reach a "final impasse," after engaging in active communication, negotiation, or other attempts to resolve the matter.  (*Ripon*, 2009 WL 1034993, at p.7.)

In contrast, a school district's unexplained and unnecessary delay in filing a due process complaint can "[waive] its right to contest [s]tudent's request for an independent educational evaluation at public expense, and by itself warrants entry of judgment in favor of [s]tudent and [parent]."  (*Pajaro Valley Unified Sch. Dist v. J.S.* (N.D. Cal., Dec. 15, 2006, No. C06-0380) 2006 WL 3734289 at p.3 (*Pajaro*).)  In *Pajaro*, the school district waited nearly three months after student's request for an independent evaluation before filing a request for due process hearing to show that it appropriately conducted its own assessment.  The parties negotiated neither the need for, nor arrangements for, an independent evaluation.  The school district offered no explanation for the delay.

Long Beach argues it was under no obligation to file a request for due process hearing to demonstrate the appropriateness of its assessment because it agreed to fund a vision assessment consistent with SELPA criteria.  Long Beach also argues it had no duty to file a request for hearing to show that Dr. Stephey's rates were not reasonable.

After Parent's request for an independent vision therapy evaluation, the law required Long Beach to request a due process hearing to demonstrate the appropriateness of its own assessment or ensure it provided the independent evaluation at public expense.  (34 C.F.R. § 300.502(b)(2).)  Either obligation, to fund or file, must be

15

21

made without unnecessary delay.  (*Id.*)  The regulation provides an exception to funding, but only where the public agency demonstrates at a hearing that an independent evaluation, already obtained by a parent, did not meet agency criteria.  (34 C.F.R. § 300.502,(b)((2)(ii).)

Long Beach's mere agreement to fund an independent evaluation within SELPA criteria does not amount to ensuring Parent received an independent evaluation at public expense.  The United States Office of Special Programs, referred to as OSEP, addressed this precise issue.  The United States Department of Education tasks OSEP with administering the IDEA and developing its regulations.  OSEP issued guidance on whether a public agency must file a request for hearing or fund an independent evaluation under 34 C.F.R. § 300.502, in several letters.  In *Letter to Parker*, 41 IDELR 155 (OSEP 2004), OSEP reviewed and issued recommendations for changes to California Department of Education, referred to as CDE, guidance on independent evaluations. OSEP recommended that CDE's guidelines include a statement that if a parent elects an independent evaluator not on the public agency's list of evaluators, and the public agency believes the evaluator does not meet agency criteria, or there is no justification for selecting an evaluator not meeting agency criteria, the public agency may file for due process rather than pay for the independent evaluation.  Where the public agency decides not to initiate a due process hearing, it must ensure the parent is reimbursed for the evaluation.  (*Id.*)  The guidance did not recommend that a public agency merely offer an evaluation and do nothing more.  The CDE's March 11, 2021 guidance on independent evaluations reiterates the fund or file requirements of 34 C.F.R. § 300.502.

In *Letter to Anonymous*, 56 IDELR 175 (OSEP 2010), OSEP addressed, among other things, a parent's options in response to a public agency's refusal to fund or file. For a parent who believed their right to an independent evaluation was being

16

compromised, OSEP stated the parent could, without first obtaining the independent evaluation, file for due process to challenge the school district's failure to provide the independent evaluation.  Parent could also seek mediation or file a State compliance complaint.  Notably, none of the options suggested by OSEP obviated the need for a school district to fund or file.

A public agency may not delay its decision to seek a due process hearing or provide a publicly funded independent evaluation so long as to essentially eliminate a parent's right to an independent evaluation.  (*Letter to Anonymous*, 21 IDELR 1185 (OSEP 1994); *Letter to Katzerman*, 28 IDELR 310 (OSEP 1997).)

The Ninth Circuit's recent decision, in *Alta Loma*, *supra*, 849 Fed.Appx. 678, based on a factual pattern substantially similar to the instant matter, supports OSEP's informal guidance and.  In *Alta Loma,* the school district contended the independent visual therapy assessor's fee for an evaluation exceeded district's independent evaluation policy cost criteria.  Student had not provided district with unique circumstances justifying an independent evaluation exceeding the cost criteria.  Once the parties reached a final impasse on the parameters for the independent evaluation, the school district filed a request for due process hearing on the issue of student's entitlement to an independent vision therapy evaluation by an evaluator of student's choosing who did not meet the requirements of district's independent educational evaluation policy. Student filed on the issue of district's unreasonable delay.  District continued its matter until the parties negotiated an independent evaluation within district's reasonable cost criteria.  The matter proceeded to decision on student's companion issue and ultimately appealed to the Ninth Circuit.

The Ninth Circuit found the school district did not unreasonably delay filing for due process where the parties negotiated evaluation criteria, reached impasse, and the

17

district filed for due process only days later.  (*Alta Loma*, 849 Fed.Appx. 678, p. 679-680.).
The Ninth Circuit found that a district's failure to explain its delay weighed in favor of
finding unnecessary delay.  Notably, the Ninth Circuit did not find that school districts
need not file for due process once they've agreed to fund an independent evaluation
meeting their criteria.  (*See also*, *A.A. v. Goleta Union School Dist.* (C.D. Cal. 2017, No.
CV1506009DDPMRWX) 2017 WL 700082 (*Goleta*) (district filed a request for due process
hearing to determine student's entitlement to an independent evaluation with a chosen
evaluator exceeding its cost criteria.)  Agreeing to fund an independent evaluation stops
short of ensuring provision of an independent evaluation at public expense.

After Parent's August 10, 2020 correspondence to Long Beach seeking an
independent vision therapy evaluation, Long Beach faced a decision between two
distinct alternatives.  Either initiate a due process hearing to show that its evaluation was
appropriate or provide the independent evaluation at public expense.  Either alternative
must be made without unnecessary delay.  (34 C.F.R. § 300.502(b)(4); Ed. Code, § 56329,
subd. (c).)

In *Ripon supra,* 2009 WL 1034993 at p.7, the parties spent some time negotiating
providers but ultimately the school district was faced with a choice to file for due
process or grant the independent evaluation request with one of student's requested
providers.  The court found that the parties discussed student's request for independent
evaluations until they came to a final impasse, after which district filed a request for due
process to defend its assessments less than three weeks later.  Here, Long Beach did not
grant the request for independent evaluation with Student's chosen provider, leaving
Long Beach with no option but to file a request for due process to resolve the dispute,
as districts did in *Alta Loma* and *Goleta*.

18

In *Pajaro, supra*, 2006 WL 3734289, at p. 3, the court found the school district waived its right to contest an independent evaluation request by waiting nearly three months before filing a request for due process to demonstrate the appropriateness of its own evaluation.  Here, Long Beach offered no valid explanation for its delay, once the parties reached a final impasse on October 6, 2020, approximately eight months ago.

Student persuasively demonstrated that Long Beach unnecessarily delayed filing a request for due process hearing after the parties reached an impasse regarding the parameters of the independent vision therapy evaluation.  Long Beach was required to, but did not, file a request for due process hearing on the issue of Student's entitlement to an independent vision therapy evaluation by an evaluator of Student's choosing who exceeded Long Beach's cost criteria for independent educational evaluations.  Without that determination, Long Beach essentially eliminated Parent's right to the independent evaluation at public expense.

Long Beach unnecessarily delayed Student's access to an independent vision therapy evaluation by failing to file a request for due process hearing after the parties reached a final impasse regarding an assessor that refused to meet Long Beach's reasonable cost criteria.

LONG BEACH'S PROCEDURAL VIOLATION ENTITLES STUDENT TO AN
INDEPENDENT EVALUATION AT PUBLIC EXPENSE

Student contends Long Beach's failure to timely file a request for due process hearing resulted in a denial of a FAPE.  Long Beach argues that Student presented no evidence that Long Beach denied Student a FAPE due to its failure to file a request for due process hearing.

19

A district's violation of its obligation to assess a student is a procedural violation of the IDEA and the California Education Code. (*Park v. Anaheim Union High Sch. Dist., et al.* (9th Cir. 2006) 464 F.3d 1025, 1031-1033.) Procedural violations of the IDEA only constitute a denial of FAPE if they: (1) impeded the student's right to a FAPE; (2) significantly impeded the parent's opportunity to participate in the decision making process; or (3) caused a deprivation of educational benefits. (20 U.S.C. § 1415(f)(3)(E)(ii); Ed. Code, § 56505, subd. (f)(2); see *N.B. v. Hellgate Elementary Sch. Dist., ex rel. Bd. of Directors, Missoula County, Mont.* (9th Cir. 2008) 541 F.3d 1202, 1208, quoting *Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.* (9th Cir. 2001) 267 F.3d 877, 892.)

School districts have a "natural advantage" in information and expertise, which Congress addressed in requiring schools to safeguard the procedural rights of parents. (*See, Schaffer,* 546 U.S. at p. 60.) In *Schaffer,* the United States Supreme Court found the IDEA provision for independent evaluations at public expense ensures that parents have access to experts who can evaluate the same materials relied upon by school districts and who can give their independent opinion. "They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the fire power to match the opposition." (*Id.,* at pp. 60-61.)

Student failed to present evidence regarding his unique needs related to vision therapy. He failed to demonstrate how delaying a vision therapy assessment somehow impacted his education. Nonetheless, Parent disagreed with the vision conclusions in Long Beach's October 2019 psychoeducational evaluation and sought more information on Student's processing issues.

Moreover, Long Beach based its failure to file a timely request for due process hearing on its mistaken belief that it need not do so. Long Beach's baseless and unnecessary delay in filing for a due process hearing waived its right to contest

provision of an independent evaluation at public expense and warrants entry of an award in favor of student.  (*See*, *Pajaro*, *2006* WL 3734289, at p.3.)

Long Beach significantly impeded Parent's opportunity to participate in the decision making process.  Delaying a hearing on the merits caused a delay in Parent obtaining a competing expert opinion.  Parent and Student were left without a realistic opportunity to access the necessary evidence, and without an expert with the fire power to match the opposition.  Long Beach's delay impeded Parent's ability to ensure that both assessments may be considered when crafting Student's IEPs.

For the foregoing reasons, Student met his burden of proof in Issue 1(b) that Long Beach's delay in filing a request for due process hearing resulted in denying Parent the opportunity to participate in the development of Student's educational program.

ISSUE 2:  DID LONG BEACH DENY STUDENT A FAPE AFTER STUDENT'S AUGUST 17, 2020 REQUEST FOR INDEPENDENT EDUCATIONAL EVALUATIONS IN THE AREAS OF CENTRAL AUDITORY PROCESSING DISORDER, OCCUPATIONAL THERAPY, AND PSYCHOEDUCATION BY FAILING TO EITHER PROVIDE THE ASSESSMENTS OR DENY THE ASSESSMENTS AND TIMELY FILE A REQUEST FOR DUE PROCESS HEARING?

Student contends that Long Beach simply ignored Parent's August 17, 2020 request for independent educational evaluations in central auditory processing disorder, occupational therapy and psychoeducation and, as such, waived its defenses.  Student contends she disagreed with Long Beach's psychoeducational assessment at IEP meetings, thus entitling her to the various requested assessments.  Student also

21

contends Long Beach's procedural violation resulted in depriving Parent of meaningful participation in the development of Student's IEPs.

Long Beach contends that Student is not entitled to seek four independent educational evaluations based upon disagreement with a single psychoeducational assessment.  Long Beach further contends that, since it granted Student's request for an independent vision therapy evaluation, the law precludes Student from seeking any further independent evaluations.  Long Beach also argues that Student did not state a disagreement with any assessment for central auditory processing, occupational therapy, or psychoeducation, excepting in the area of vision processing.

As demonstrated in Issue 1, in response to a request for independent evaluations, the law requires a school district to, without unnecessary delay, either request a due process hearing to demonstrate the appropriateness of its own assessments or provide the independent evaluations at public expense.  (34 C.F.R. § 300.502(b)(2).)

Here, the parties stipulated that Long Beach failed to respond to Parent's August 17, 2020 request for independent evaluations.  A response to the request for evaluations precipitates provision of the evaluations.  Accordingly, Issue 2, subparts (a) and (b) are decided together.

A school district must provide parents with prior written notice when it refuses to initiate an evaluation of a child with special needs.  (34 C.F.R. § 300.503.)  The notice must include an explanation of why the agency proposes or refuses to take the action.

Long Beach failed to provide Parent with prior written notice in response to her August 17, 2020 request for independent evaluations in central auditory processing, occupational therapy, and psychoeducation.  Long Beach failed to explain why it refused

to grant the independent evaluations, which effectively precluded Parent from responding to any perceived deficiencies in her request.

The provision of an educational evaluation is not automatic.  To obtain an independent evaluation, the student must disagree with an assessment obtained by the public agency and request an independent evaluation.  (34 C.F.R. § 300.502(b)(1), (2).)  A Parent is entitled to only one independent evaluation at public expense each time the school district conducts an evaluation with which the parent disagrees.  (34 CFR § 300.502(b)(5).)

If a parent disagrees with an evaluation because a specific area of the child's needs wasn't assessed, the parent has a right to request an independent evaluation at public expense to fill the gap in the district's evaluation.  (*Letter to Baus* (OSEP 2015) 68 IDELR 279.)  The label assigned to a particular assessment is less important than the skill area it evaluates.  The issue is whether the district appropriately assessed the student in all areas of suspected disability.  (*See*, *Avila v. Spokane Sch. Dist. 81*, (9th Cir. 2017, unpublished) 686 F. App'x 384.)

A parent does not need to use a specific word or phrase to express disagreement with a district evaluation.  (*Genn v. New Haven Bd. of Educ.* (D. Conn. 2016) 219 F. Supp.3d 296, 317 (Parent informing IEP team she did not believe district's reading tests were sensitive enough to identify all of her child's deficits was sufficient to put district on notice of a disagreement with it's psychoeducational assessment.)

Here, Parent's August 17, 2020 written request for independent evaluations did not state a disagreement with Long Beach's assessments, testing instruments, or conclusions.  Parent, at hearing, generally stated that she voiced disagreement with

Long Beach's assessments, including its psychoeducational assessment, in various IEP meetings.  She did not specifically state each area of disagreement.

On the other hand, Long Beach failed to seek clarification of Parent's request and, more importantly, failed to respond to it in any manner.  Long Beach based its failure to provide prior written notice, fund the requested evaluations, or timely file a request for due process hearing to demonstrate the appropriateness of its assessments on its mistaken belief that it need not do so.

As demonstrated in Issue 1, failure to provide appropriate prior written notice or respond to a request for independent evaluations constitutes a procedural violation. While some procedural violations may be deemed harmless, procedural violations that substantially interfere with parents' opportunity to participate in the IEP formulation process clearly result in the denial of a FAPE.  (*Timothy O. v. Paso Robles Unified Sch. Dist.* (9th Cir. 2016) 822 F.3d 1105, 1118 (quoting *Amanda J.*, 267 F.3d at 892.) Accordingly, courts have found the failure to respond without unnecessary delay to a parent's request for an independent educational evaluation independently actionable and compensable under the IDEA.  (*D.D. v. Garvey Sch. Dist.* (C.D. Cal. June 16, 2021) 2021 WL 2453145, pp.10-11; *see also*, *Pajaro*, 2006 WL 3734289, at p.3.)

Here, Long Beach failed to safeguard the procedural protections afforded to Parent and Student under the IDEA.  That failure resulted in depriving Parent the opportunity to obtain independent expert opinions to help her better understand her son's needs and to aid her in developing her son's educational program at IEP meetings.

For the foregoing reasons, Student met his burden of proof in Issue 2, subsections (a) and (b) that Long Beach's failure to provide or deny Student's request for independent evaluations in central auditory processing, occupational therapy, and

24

psychoeducation resulted in denying Parent the opportunity to participate in the development of Student's educational program and are independently actionable and compensable under the IDEA.

## CONCLUSIONS AND PREVAILING PARTY

As required by California Education Code section 56507, subdivision (d), the hearing decision must indicate the extent to which each party has prevailed on each issue heard and decided.

Issue 1(a):  Long Beach did not deny Student a FAPE in response to Parent's request for an independent vision therapy evaluation in August 2020, by failing to timely fund the evaluation by relying on an unreasonable limit on the cost of the evaluator. Student did not prevail on Issue 1, subsection a.

Issue 1(b):  Long Beach denied Student a FAPE in response to Parent's request for an independent vision therapy evaluation in August 2020, by failing to file a request for due process hearing to demonstrate that Parent's requested evaluator exceeded Long Beach's cost criteria.  Student prevailed on Issue 1, subsection b.

Issue 2(a):  Long Beach denied Student a FAPE by failing to provide him with independent educational evaluations in the areas of central auditory processing disorder, occupational therapy, and psychoeducation after Student's August 17, 2020 request.  Student prevailed on Issue 2, subsection a.

Issue 2(b):  Long Beach denied Student a FAPE by failing to deny the request for evaluations and file a timely request for due process hearing to defend Long Beach's assessments.  Student prevailed on Issue 2, subsection b.

REMEDIES

Under federal and state law, courts have broad equitable powers to remedy the failure of a school district to provide FAPE to a disabled child.  (20 U.S.C. § 1415(i)(1)(C)(iii); Ed. Code, § 56505, subd. (g); *see School Committee of the Town of Burlington, Massachusetts v. Dept. of Education* (1985) 471 U.S. 359, 369 [105 S.Ct. 1996, 85 L.Ed.2d 385] (*Burlington*).)  This broad equitable authority extends to an Administrative Law Judge who hears and decides a special education administrative due process matter.  (*Forest Grove School Dist. v. T.A.* (2009) 557 U.S. 230, 244, fn. 11 [129 S.Ct. 2484, 174 L.Ed.2d 168].)

In remedying a FAPE denial, the student is entitled to relief that is appropriate in light of the purposes of the IDEA.  (20 U.S.C. § 1415(i)(2)(C)(iii); 34 C.F.R. § 300.516(c)(3) (2006).)  The purpose of the IDEA is to provide students with disabilities a free appropriate public education which emphasizes special education and related services to meet their unique needs.  (*Burlington*, 471 U.S. 359, 374.)  Appropriate relief means relief designed to ensure that the student is appropriately educated within the meaning of the IDEA.  (*Student W. v. Puyallup School Dist.* (9th Cir. 1994) 31 F.3d 1489, 1497.)  The award must be fact-specific and be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.  (*Reid ex rel. Reid v. District of Columbia* (D.D.C. Cir. 2005) 401 F.3d 516, 524.)

INDEPENDENT VISION THERAPY EVALUATION

Long Beach unnecessarily delayed filing a request for due process hearing to determine the reasonableness of its cost criteria.  Student failed to demonstrate unique circumstances justifying the choice of an assessor exceeding Long Beach's reasonable

26

cost criteria.  Student was entitled to an independent vision therapy evaluation from an assessor of his choosing, who met Long Beach's reasonable cost criteria.

Therefore, it is equitable to award Student an independent vision therapy evaluation subject to Long Beach's criteria for independent educational evaluations. Student shall have until 5:00 PM on August 15, 2021, to notify Long Beach in writing of his choice of an optometrist, qualified pursuant to Long Beach's criteria for independent evaluations, to conduct a vision therapy assessment, at a cost not to exceed Long Beach's cost criteria of $500.  Should Student fail to meet any of the requirements identified here, his right to an independent vision therapy evaluation at Long Beach's expense shall be deemed waived.

## INDEPENDENT CENTRAL AUDITORY PROCESSING, OCCUPATIONAL THERAPY, AND PSYCHOEDUCATIONAL EVALUATIONS

Allowing a district to ignore the IDEA's procedural protections with impunity effectively eviscerates such protections.  Long Beach denied meaningful parental participation and denied Student a FAPE by ignoring Parent's request for independent educational evaluations.  (See, *Timothy O.*, 822 F.3d 1105, 1118.)  Long Beach's unexplained failure to respond to Parent's independent educational evaluation requests waived its right to contest the requests and, by itself, warrants an award of the requested independent evaluations.  (*Garvey, 2021* WL 2453145, pp.10-11; *Pajaro*, 2006 WL 3734289, p. 3.)

Awarding the requested evaluations serves some of the many purposes of the IDEA.  First, the evaluations will help the parties determine Student's unique needs and the nature and extent of the special education and related services required to address them.  (*Letter to Baus* (OSEP 2015) 68 IDELR 279.)  Second, the evaluations will provide

27

Parent with access to experts who can evaluate the same materials relied upon by Long Beach and who can give their independent opinion to aid Parent in development of Student's IEPs.  (*Schaffer*, 546 U.S. at pp. 60-61.)

Therefore, it is equitable to award Student independent educational evaluations in the areas of central auditory processing, occupational therapy, and psychoeducation, subject to Long Beach's criteria for independent educational evaluations.

ORDER

1. Student shall have until 5:00 PM on August 15, 2021, to notify Long Beach in writing of his choice of an optometrist to conduct a vision therapy evaluation of Student.

   a. The evaluator must meet SELPA criteria for independent evaluations, including the $500 cost criteria for vision assessments.

   b. Nothing precludes Student from establishing that unique circumstances exist to justify exceeding any of the SELPA criteria for independent evaluations.

   c.  Should Student fail to meet any of the requirements identified here, his right to an independent vision therapy evaluation at Long Beach's expense shall be deemed waived.

2. Long Beach shall provide Student with independent educational evaluations in the areas of central auditory processing, occupational therapy, and psychoeducation, consistent with Long Beach's criteria for such evaluations.

   a. Student shall provide Long Beach with the names of independent evaluators for each requested assessment, qualified under Long Beach's criteria, no later than August 15, 2021.

3. All Student's other requests for relief are denied.

28

RIGHT TO APPEAL THIS DECISION

This is a final administrative decision, and all parties are bound by it.  Pursuant to Education Code section 56505, subdivision (k), any party may appeal this Decision to a court of competent jurisdiction within 90 days of receipt.

*Cole Dalton*


Cole Dalton

Administrative Law Judge

Office of Administrative Hearings

29

35